IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 23-cr-00049-PAB-3

UNITED STATES OF AMERICA,

      Plaintiff,

v.

3. LEONARDO MEDINA,

      Defendant.

---

### ORDER

---

    This matter is before the Court on Defendant Leonardo Medina's Motion for Judgment of Acquittal or in the Alternative Motion for New Trial [Docket No. 473]. The government filed a response. Docket No. 516.

### I.    BACKGROUND

    On February 22, 2023, Mr. Medina was indicted on the following counts: conspiracy to distribute and possess with the intent to distribute methamphetamine, fentanyl, and cocaine in violation of 21 U.S.C. § 846 (Count One); possession with the intent to distribute methamphetamine between March 20, 2022 and April 1, 2022 in violation of 21 U.S.C. § 841(a)(1) (Count Twenty-Two); possession with the intent to distribute methamphetamine on June 19, 2022 (Count Thirty); possession with the intent to distribute methamphetamine between June 20, 2022 and June 22, 2022 (Count Thirty-One); possession with the intent to distribute fentanyl between June 20, 2022 and June 22, 2022 (Count Thirty-Two); and possession with the intent to distribute

methamphetamine between July 5, 2022 and July 9, 2022 (Count Thirty-Three).  Docket No. 1 at 1-3, 13, 16-18.

Because all of Mr. Medina's alleged co-conspirators entered plea agreements, Mr. Medina was the only defendant who went to trial.  *See* Docket Nos. 459-464.  After the close of the government's case, Mr. Medina moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a) as to Counts One, Thirty, Thirty-One, and Thirty-Two.  Docket No. 463 at 2.  The Court denied Mr. Medina's motion.  *Id.* On April 8, 2025, the jury found Mr. Medina guilty on all counts.  Docket No. 468.  In response to the questions on the verdict form, the jury found that, as to Count One, Mr. Medina conspired to distribute or possess with the intent to distribute 50 grams or more of actual methamphetamine and 40 or more grams of a mixture or substance containing fentanyl.  *Id.* at 1-2.  The jury also found that Mr. Medina possessed with the intent to distribute 50 grams or more of actual methamphetamine as to Counts Twenty-Two and Thirty-Three and 500 grams or more of a mixture or substance containing methamphetamine as to Counts Thirty and Thirty-One.  *Id.* at 2-5.

## II.    ANALYSIS

On April 15, 2025, Mr. Medina moved for judgment of acquittal on Counts One and Thirty pursuant to Rule 29(c)(2).  Docket No. 473 at 4.  In the alternative, Mr. Medina moved for a new trial as to Counts One and Thirty pursuant to Rule 33.  *Id.* at 11.  The government filed a response to Mr. Medina's motion on May 6, 2025.  Docket No. 516.

### A. <u>Motion for Judgment of Acquittal Pursuant to Rule 29(c)(2)</u>

The Court first considers Mr. Medina's motion for judgment of acquittal. In considering a motion for judgment of acquittal under Rule 29, a court views the evidence "in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine[s] whether that evidence, if believed, would establish each element of the crime." *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014) (quotations omitted).[1] A court may enter a judgment of acquittal "only if the evidence that defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (citation omitted).

#### 1. *Count One: Conspiracy*

Mr. Medina argues that the trial evidence demonstrated the existence of three separate conspiracies rather than the single conspiracy charged in Count One of the indictment, constituting a variance between the trial evidence and the indictment. Docket No. 473 at 4-9. He argues that the evidence did not show a "single criminal objective []or one overarching plan, only similar objectives between and among similarly

---

[1] *Fuller* concerned a motion for judgment of acquittal at the close of government's case pursuant to Fed. R. Civ. P. 29(a) and a motion for judgment of acquittal after the close of all evidence pursuant to Fed. R. Civ. P. 29(c). *See Fuller,* 751 F.3d at 1153. The standard that controls Rule 29(a) and (b) motions are the same. *See United States v. Aguilar*, 2024 WL 3401090, at *6 (D.N.M. July 12, 2024) ("Although the motion of acquittal's timing affects the evidence that the district court considers in assessing the motion and also affects appellate review, the analytical standard . . . remains the same.") (citing 2A Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 465 (4th ed. 2023) (footnote omitted)).

situated people which created multiple conspiracies." *Id.* at 5. Mr. Medina contends

that the evidence showed three distinct conspiracies: (1) one involving Mr. Medina,

Martin Piedra-Gutierrez, and Jose Serrano-Vargas; (2) one involving Mr. Medina, a

person who testified against him at trial ("the cooperator"), and Nathan Goolsby; and (3)

one involving Mr. Medina, Marcos Leon-Pedroza, and an unidentified male. *Id.* at 7.

a. **Whether there was a variance**

To convict a defendant of a conspiracy pursuant to 21 U.S.C. § 846, the

government must prove: "(1) an agreement by two or more persons to violate the law;

(2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary

involvement in the conspiracy; and (4) interdependence among co-conspirators."

*United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011). A variance challenge is

"essentially an attack on the interdependence element of conspiracy." *United States v.*

*Cushing*, 10 F.4th 1055, 1064 (10th Cir. 2021). Therefore, a "conspiracy variance

claim" is treated as "an attack on the sufficiency of the evidence supporting the jury's

finding that each defendant was a member of the same conspiracy." *Id.* (citation

omitted). A court must ask "whether a reasonable jury could have found the defendant

guilty of the charged conspiracy beyond a reasonable doubt." *Id.* at 1064-65 (citation

omitted).

Interdependence exists if the "conspirators intended to act together for their

shared mutual benefit within the scope of the conspiracy charged." *United States v.*

*Hamilton*, 587 F.3d 1199, 1208 (10th Cir. 2009) (emphasis and citation omitted). This

requirement is met if the "alleged coconspirators were united in a common unlawful goal

or purpose" and the "defendant's activities facilitated the endeavors of another alleged

coconspirator or facilitated the venture as a whole."  *Id.* at 1209 (emphasis and citation omitted).  The determination of whether a single conspiracy exists hinges on whether "there is sufficient proof of mutual dependence and assistance."  *United States v. Fishman*, 645 F.3d 1175, 1190 (10th Cir. 2011) (citation and emphasis omitted).  This showing may be made by circumstantial evidence.  *United States v. Caldwell*, 589 F.3d 1323, 1329 (10th Cir. 2009).  Moreover, a single act may be enough to demonstrate interdependence.  *Id.*; *see, e.g.*, *Hamilton*, 587 F.3d at 1209 (rejecting argument that defendant's "one-time agreement to assist in a one-time collection of money" was insufficient to show that the defendant had rejoined the conspiracy).

Mr. Medina acknowledges that the evidence showed that he was "at the hub of all three conspiracies," Docket No. 473 at 7, and therefore does not challenge that he was connected to the three allegedly distinct conspiracies.  Rather, he argues that there was not sufficient evidence to show interdependence between the members of the three conspiracies.

"[I]nterdependence in a drug conspiracy may stem from the illegal nature of the drug trade itself."  *United States v. Carnagie*, 533 F.3d 1231, 1239 n.5 (10th Cir. 2008).  Although a court must "scrupulously safeguard each defendant individually, as far as possible, from loss of identity in the mass," "the degree of specificity with which the government must prove interdependence among [co-conspirators] may be lower in the drug context than in the context of other types of conspiracies."  *See Caldwell,* 589 F.3d at 1330.

**Alleged conspiracy between Mr. Medina, the cooperator, and Mr. Goolsby:** The cooperator testified at trial that Mr. Medina was his "boss," who decided at what

price to sell the narcotics, and that he sold methamphetamine, fentanyl, and cocaine for Mr. Medina.  Mr. Medina purchased narcotics and gave the narcotics to the cooperator, and the cooperator sold the narcotics and gave the money to Mr. Medina.  The cooperator testified that Mr. Medina gave him money so that he could rent an apartment where Mr. Medina could keep narcotics and from where the cooperator could sell narcotics.  The cooperator also testified that Mr. Goolsby was one of the individuals to whom Mr. Medina and the cooperator sold narcotics.  The cooperator's testimony was corroborated to a significant extent by wiretap evidence.

**Alleged conspiracy between Mr. Medina, Mr. Piedra-Gutierrez, and Mr. Serrano-Vargas**: The cooperator testified that Mr. Piedra-Gutierrez purchased narcotics from Mr. Medina on credit.  *See United States v. Aguilar*, 609 F. App'x 960, 964 (10th Cir. 2015) (unpublished) ("evidence of the fronting arrangement also was sufficient to establish interdependence").  The cooperator confirmed the authenticity of a wiretapped conversation between himself and Mr. Medina, which concerned Mr. Piedra-Gutierrez.  The cooperator testified that Mr. Medina and the cooperator discussed putting "some pressure" on Mr. Piedra-Gutierrez to give Mr. Medina a truck, in order for Mr. Piedra-Gutierrez to pay down his debt to Mr. Medina.  *See* Trial Exhibit No. 33A at 11.  He further testified that Mr. Medina and the cooperator intended to give the truck to Mr. Goolsby so Mr. Goolsby could use it to facilitate drug deals.  *See United States v. Davis,* 995 F.3d 1161, 1166 (10th Cir. 2021) (holding that there was sufficient of interdependence where defendant "made repeated sales to both men, fronted them drugs, and even gave [co-conspirator] a vehicle and firearm to further his drug-trafficking activities").  On another wiretapped call, Mr. Medina told the cooperator that

he needed money from Mr. Piedra-Gutierrez to pay for a delivery of narcotics that was coming "from the south."  *See* Trial Exhibit No. 69A at 1-2.

**Alleged conspiracy between Mr. Medina, Mr. Leon-Pedroza, and Unidentified Male:** Wiretapped calls, law enforcement testimony, and photographs could support a reasonable jury's finding that Mr. Medina and Mr. Leon-Pedroza arranged for Mr. Leon-Pedroza to receive approximately 22.585 kilograms of methamphetamine in Arlington, Texas on July 9, 2022.  *See* Trial Exhibit No. 108 at 1, The evidence showed that Mr. Medina and Mr. Leon-Pedroza met twice prior to the July 9, 2022 transaction.  *See* Trial Exhibit Nos. 47A-48A, 51A-54A, 95, 98-102, 122-123. On July 6, 2022, after one such meeting, Mr. Medina received a wiretapped call from an unknown male with a phone number that had a country code of 52, which Special Agent Joshua Lievers testified is a country code assigned to Mexico.  Trial Exhibit No. 49A. On this call, the unknown male told Mr. Medina that Mr. Medina's "hometown" needs "25 pounds.  Right Away."  *Id.* at 1.  Special Agent Lievers testified that the unknown male was telling Mr. Medina that he could get "25 pounds," presumably of methamphetamine, that Mr. Medina needed.

The Court finds that a reasonable jury could find interdependence among the members of the allegedly distinct conspiracies because there was sufficient proof of mutual dependence and assistance.  "Distinguishing between a single, large conspiracy and several smaller conspiracies is often difficult," and as a result, courts "will generally defer to the jury's determination of the matter."  *Caldwell*, 589 F.3d at 1329.  The Court instructed the jury that, in order to find Mr. Medina guilty of Count One, it had to find the following:

> You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

Docket No. 465 at 27. The jury was instructed that Mr. Medina raised as a defense that there were "two or more separate conspiracies, instead of the single conspiracy charged in the indictment," in an instruction that read:

> Count One of the indictment charges that the defendant was a member of one single conspiracy to commit the crime of conspiracy to distribute or possess with intent to distribute methamphetamine, fentanyl, and cocaine.

> The defendant argues that there were really two or more separate conspiracies, instead of the single conspiracy charged in the indictment.

> You must determine whether the single conspiracy, as charged in the indictment, existed, and if it did, whether the defendant was a member of it.

> Proof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment, unless one of the several conspiracies which is proved is the single conspiracy charged in the indictment.

> If you find that the defendant was not a member of the conspiracy charged, then you must find the defendant not guilty, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of some other conspiracy is not enough to convict.

> But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government proved that he was also a member of the conspiracy charged in the indictment.

*Id.* at 29. The jury convicted Mr. Medina of Count One and, in doing so, determined that there was a single conspiracy as charged in the indictment and rejected Mr. Medina's defense that there were multiple conspiracies. *Cf. United States v. Ailsworth*, 138 F.3d 843, 850 (10th Cir. 1998) (holding that the "district court's instructions also safeguarded Defendant from any potential prejudice flowing from evidence attempting to establish the existence of one broad conspiracy" where the district court "repeatedly instructed

the jury that Defendant was on trial only for the charges contained in the indictment");

*Cushing*, 10 F.4th at 1074 (holding that the district court did not err in refusing to provide

an instruction informing the jury of defendant's defense – that there were multiple

conspiracies rather than the one alleged in the indictment – where the "jury instructions

consistently referred to one, single conspiracy throughout the document" and "gave

definitions and clarifications for 'conspiracy,' 'knowing and voluntary involvement' in a

conspiracy, and 'interdependence'").  The jury's verdict is entitled to deference

regarding whether Mr. Medina was guilty of conspiracy as charged in Count One.  *See*

*Caldwell*, 589 F.3d at 1329.  As Mr. Medina concedes, "it is for the jury to decide

whether there existed sufficient evidence to establish a single conspiracy here."  Docket

No. 473 at 6.

　　　　Moreover, even if the Court did not give deference to the verdict as to Count

One, the Court finds that a reasonable jury could find Mr. Medina guilty on Count One

beyond a reasonable doubt in light of the evidence of interdependence among the

alleged conspirators as charged in Count One.  Accordingly, there was no variance.

### b. **Whether the alleged variance was prejudicial**

　　　　In the alternative, even if the Court found that the evidence presented by the

government resulted in a variance from the crime charged in the indictment, Mr. Medina

is only entitled to a judgment of acquittal if he can show that the variance was

prejudicial.  "A defendant's substantial rights are not prejudiced merely because the

defendant is convicted upon evidence which tends to show a narrower scheme than

that contained in the indictment, provided that the narrower scheme is fully included

within the indictment."  *United States v. Harrison*, 942 F.2d 751, 758 (10th Cir. 1991)

(internal quotation and citation omitted). Nevertheless, a "variance can be prejudicial by either failing to put the defendant on sufficient notice of the charges against him, or by causing the jury to determine the defendant's guilt by relying on evidence presented against other defendants who were involved in separate conspiracies (the so-called 'spillover effect');" *United States v. Hill*, 786 F.3d 1254, 1266 (10th Cir. 2015) (internal citation omitted); *see also Carnagie*, 533 F.3d at 1241 (characterizing the latter form of prejudice as "guilt transference," wherein "the evidence adduced against co-conspirators involved in separate conspiracies [is] more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt") (citation omitted).

Mr. Medina does not argue that he lacked sufficient notice of the charges against him, but focuses instead on the issue of evidentiary spillover. He argues that he was prejudiced by the introduction of evidence of "Martin Pie[d]ra-Gutierrez'[s] numerous controlled buys to undercover agents." Docket No. 473 at 7. Specifically, Mr. Medina contends that the "'spill-over' effect here caused the jury to determine Mr. Medina's guilt by relying on evidence presented against co-defendant Pie[d]ra-Gutierrez who was involved in separate conspiracies with other indicted and unindicted co-conspirators." *Id*. at 8. While not entirely clear, Mr. Medina's argument about "separate" conspiracies with other co-conspirators seems to be that the controlled buys with Mr. Piedra-Gutierrez "began a full year before the April 1, 2022, transaction" involving Mr. Medina. *See id*. Thus, Mr. Medina argues that evidence of controlled buys which occurred before any evidence of Mr. Medina's involvement prejudiced Mr. Medina. *See id*.

The Court rejects Mr. Medina's spill-over argument. First, the argument is speculative. Mr. Medina shows nothing to suggest that the controlled buys with Mr.

Piedra-Gutierrez that did not involve Mr. Medina were the sole reason for his conviction as to Count One.  Instead, the Court finds that a reasonable jury could have convicted Mr. Medina of Count One based on the evidence, reviewed above, not involving the controlled buys.  Second, the Court finds that Mr. Medina has not shown that the controlled buys were irrelevant or improper evidence regarding the allegations in Count One.  "Evidence of acts prior to a conspiracy's alleged onset" is "highly relevant to a proper understanding of the origin, scope, nature and objective of the conspiracy as well as to defendant's participation in it."  *United States v. Crocker*, 788 F.2d 802, 806 (1st Cir. 1986).  Furthermore, evidence of the "undercover deals" are "highly relevant to establish the existence of the conspiracy and its particular workings."  *Id*. at 806-07. Here, controlled purchases from Mr. Piedra-Gutierrez properly established that Mr. Piedra-Gutierrez was a narcotics dealer.  Once surveillance demonstrated Mr. Medina's involvement in narcotics sales with Mr. Peidra-Gutierrez, the jury could infer that Mr. Medina had knowledge of and knowingly participated in a drug conspiracy that involved Mr. Piedra-Gutierrez.  *See United States v. Torres,* 685 F.2d 921, 925 (5th Cir. 1982) (holding that "evidence of the sample transactions" that occurred prior to defendants joining the conspiracy "formed an integral and natural part of the agents' accounts of the circumstances surrounding the offenses for which the defendants were indicted" and "was relevant, and its probative value outweighed any possibility of unfair prejudice") (citation and alteration omitted).  Therefore, the Court rejects Mr. Medina's argument that the jury improperly relied on evidence of the controlled buys to determine Mr. Medina's guilt.

Mr. Medina argues that he was more likely to have been prejudiced by
evidentiary spillover because he was the "hub of only three of the identified conspiracies
and was indicted along with 13 other co-defendants." Docket No. 473 at 8. However,
as Mr. Medina acknowledges, he was the "only named defendant to proceed to trial."
*Id.* It is true that a "variance between the number of conspiracies charged and the
number proved can be very prejudicial in cases in which multiple conspirators are tried
together" because "'[t]he dangers of transference of guilt from one [defendant] to
another across the line separating conspiracies' are present." *United States v. Napue*,
834 F.2d 1311, 1333 (7th Cir. 1987) (citing *Kotteakos v. United States,* 328 U.S. 750,
774 (1946)). However, in cases where a defendant is tried individually, as was the case
here, courts find that there is little concern that the evidence was not considered
separately as to each individual defendant. *See Ailsworth*, 138 F.3d at 850 (the court
had "no concern that the evidence was not considered separately as to each individual
defendant" because while defendant "and six other persons were indicted, [defendant]
was the only defendant on trial because the six alleged coconspirators made plea
arrangements prior to trial, and the evidence proved two conspiracies at most").
Furthermore, there is a decreased likelihood of prejudice where the government
connects the defendant to each of the allegedly distinct conspiracies, such that the
defendant is at the "hub" in the wheel conspiracy. *See Napue*, 834 F.2d at 1333 ("Even
if there were two conspiracies, the evidence demonstrated that [defendant] was at the
'hub' of both conspiracies. When this situation is presented, it is usually not necessary
to explore the ways in which the plan might be recast as a series of more limited

12

agreements.").  As Mr. Medina acknowledges, he was at the "hub" of the allegedly

separate conspiracies.  Docket No. 473 at 8.

     Even if the Court did find that there was a variance, Mr. Medina cannot show that

he was prejudiced by the variance.  Accordingly, the Court will deny Mr. Medina's

motion for judgment of acquittal on Count One.

### 2.  *Count Thirty: Distribution and Possession with Intent to Distribute Methamphetamine*

     Mr. Medina argues that there was insufficient evidence to support his conviction

on Count Thirty because it did not prove that "Mr. Medina possessed controlled

substances o[n] June 19, 2022" and "[n]o drugs were ever recovered from the

suspected transaction."  *Id.* at 11.  He contends that there was not sufficient

circumstantial evidence to support that Mr. Medina possessed the methamphetamine

that is the basis for Count Thirty.  *Id*. at 9-10.

     In Count Thirty, Mr. Medina and Mr. Goolsby were charged with "knowingly and

intentionally distribut[ing] and possess[ing] with the intent to distribute 500 grams and

more of a mixture and substance containing a detectable amount of methamphetamine"

on or about June 19, 2022.  Docket No. 1 at 16.  The government had the burden to

prove that Mr. Medina "(1) possessed the controlled substance; (2) knew he possessed

the controlled substance; and (3) intended to distribute or dispense the controlled

substance."  *United States v. Khondaker*, 263 F. App'x 693, 699 (10th Cir. 2008)

(unpublished) (citing *United States v. McKissick,* 204 F.3d 1282, 1291 (10th Cir. 2000)).

Mr. Medina only challenges whether there was sufficient evidence to show that Mr.

Medina possessed the controlled substance.  "Possession of a controlled substance

may be either actual or constructive."  *Id.*  A person has actual possession of an item

when he has "direct physical control over that item." *Id.*  A person has constructive

possession of an item when he "knowingly holds the power and ability to exercise

dominion and control over it." *Id.* (citation omitted).

The Court finds that there was sufficient evidence to support a reasonable jury's

finding, beyond a reasonable doubt, that Mr. Medina possessed the methamphetamine

that is the basis for Count Thirty.  The government introduced text messages between

Mr. Goolsby and Mr. Medina from June 19, 2022**.**  In a message to Mr. Medina, Mr.

Goolsby stated, "I have 2.5 lb sold today," and "I don't know how you want to do this."

Trial Exhibit Nos. 19A-21A.  Special Agent Lievers testified that Mr. Goolsby was

referring to 2.5 pounds of methamphetamine that Mr. Goolsby had sold.  Mr. Medina

texted Mr. Goolsby asking, "How do you want?"  Trial Exhibit No. 22A.  Special Agent

Lievers testified that Mr. Medina was asking Mr. Goolsby how much more of the

narcotics Mr. Goolsby wanted.  He testified that Mr. Medina and Mr. Goolsby were

figuring out how to "set up the next deal."  Mr. Goolsby replied to Mr. Medina, "I don't

have the cash if you come here I go in and sell."  Trial Exhibit No. 23A.  Special Agent

Lievers testified that he interpreted this message as Mr. Goolsby informing Mr. Medina

that he did not have money to pay off a debt to Mr. Medina or to make further

purchases, but was willing to accept narcotics to sell for Mr. Medina.

Special Agent Lievers testified that, on June 19, 2022, Mr. Medina sent Mr.

Goolsby a text message stating that Mr. Medina was on his way.  Trial Exhibit No. 24A.

Mr. Goolsby asked Mr. Medina, "How long," to which Mr. Medina replied, "One hour and

Forty five minutes Where you want me."  Trial Exhibit Nos. 26A, 27A.  Mr. Goolsby sent

Mr. Medina a text message with the address 8280 Voyager Pkwy Colorado Springs CO

80920.  Trial Exhibit No. 28A.  The government introduced data from a GPS tracker that was placed on Mr. Medina's car.  Trial Exhibit No. 94.  Based on the data, Special Agent Lievers testified that approximately an hour and a half from when Mr. Goolsby sent the address to Mr. Medina, Mr. Medina's vehicle was shown to be at 8280 Voyager Parkway.  Special Agent Lievers testified that there is a Motel 6 at that location.

The cooperator testified Mr. Medina was his "boss" and was the individual who would decide at what price to sell narcotics.  Mr. Medina purchased narcotics and the cooperator sold the narcotics to customers, giving the money from the transactions to Mr. Medina.  The cooperator would sell methamphetamine, fentanyl, and cocaine for Mr. Medina.  The cooperator also testified that Mr. Goolsby would regularly order between one to two pounds of methamphetamine from Mr. Medina and the cooperator.  He testified that when Mr. Medina sold Mr. Goolsby narcotics, including on or around June 19, 2022, the cooperator drove with Mr. Medina to Colorado Springs in Mr. Medina's vehicle where they met with Mr. Goolsby at a motel.

Mr. Medina and Mr. Goolsby's text messages, the GPS data, and the cooperator's testimony could support a reasonable jury's finding that Mr. Medina possessed methamphetamine on June 19, 2022 with the intent to distribute.  *See United States v. Capers*, 708 F.3d 1286, 1297 (11th Cir. 2013) (holding that it was "not unreasonable for the jury to conclude that [defendant] knowingly possessed the drugs charged in these counts, and intended to distribute them" where "[t]he jury heard testimony about this from several co-conspirators, and received a number of transcripts of phone conversations between [co-conspirator] and [defendant] detailing the specific drug transactions underlying the challenged counts," and the co-conspirator testified

that defendant was the "boss man" who was "solely responsible for sales of the 'big

stuff,' and shared responsibility with [co-conspirator] for distribution of the 'small stuff'");

*United States v. Infante*, 404 F.3d 376, 385-86 (5th Cir. 2005) (holding that there was

sufficient evidence to convict defendant of possession with intent to distribute where a

co-conspirator testified that defendant had arranged for the shipment of narcotics and

the testimony was "corroborated by the telephone toll records establishing a connection"

between defendant and co-conspirators and "supported by other circumstantial

evidence"); *United States v. Ojeda-Ojeda*, 282 F. App'x 705, 712 (10th Cir. 2008)

(unpublished) (holding that there was sufficient evidence to support defendant's

conviction for possession with intent to distribute where co-conspirator's testimony

established that defendant "had the ultimate ability to guide the load [of narcotics] to its

destination").

Viewing the evidence in the light most favorable to the government, the Court

finds that a reasonable jury could find that Mr. Medina was guilty beyond a reasonable

doubt of distribution and possession with the intent to distribute methamphetamine.

*See Fuller*, 751 F.3d at 1153.  Accordingly, the Court will deny Mr. Medina's motion for

a judgment of acquittal on Count Thirty.

### B.  Motion for New Trial Pursuant to Rule 33

Mr. Medina requests, in the alternative, that the Court grant his request for a new

trial under Fed. R. Crim. P. 33 due to a "fatal variance" that occurred regarding Count

One.  Docket No. 473 at 11.  For the same reasons described in his Rule 29 motion, Mr.

Medina argues that the evidence supporting his conviction on Counts One and Thirty

were insufficient, entitling him to a new trial.  *Id.* at 11-12.  The Court rejects Mr.

Medina's argument that there was a prejudicial variance and that there was insufficient evidence that Mr. Medina possessed the narcotics in Count Thirty, as previously discussed.  However, Mr. Medina also argues that a new trial is warranted due to "significant credibility problems" as to "both the case agents" and the "cooperating lay witness."  *Id.* at 12.

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  "Although a trial court is afforded discretion in ruling on such a motion, and is free to weigh the evidence and assess witness credibility, a motion for new trial is regarded with disfavor and should only be granted with great caution."  *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999) (internal citation omitted).  Thus, the power to grant a new trial on the ground that the jury's verdict is contrary to the weight of the evidence "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."  *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994).

Mr. Medina argues that the testimony of the cooperator, Special Agent Lievers, and Sergeant Terrance Halliwill makes this case exceptional and entitles him to a new trial.  *See United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) ("An example of exceptional circumstances is where testimony is patently incredible or defies physical realities.").  Testimony is not incredible as a matter of law "unless it is unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature."  *United*

*States v. Dewberry*, 790 F.3d 1022, 1029 (10th Cir. 2015) (alteration and citation omitted).

Mr. Medina argues that the cooperator's testimony lacks credibility because the cooperator "failed to provide any incriminating information during his/her two interviews with Special Agent Lievers following his arrest." Docket No. 473 at 12. The evidence showed that, immediately after he was arrested, the cooperator denied involvement in drug distribution when Special Agent Lievers interviewed him. *See* Trial Exhibit No. 115. Mr. Medina also contends that the government offered the cooperator an "anticipated 30% reduction from the advisory guidelines range" in exchange for his testimony, calling into question the truthfulness of his testimony. *Id.* He further claims that the cooperator's "addiction to drugs" and his criminal history "cast significant doubt on the reliability of the testimony." *Id.*

The Court finds that the cooperator's testimony was not unbelievable on its face. The cooperator's testimony was largely corroborated by wiretapped conversations, law enforcement testimony, and GPS tracking data. *See United States v. Gonzalez-Hernandez*, No. 18-cr-00266-PAB-4, 2019 WL 1922081, at *4 (D. Colo. Apr. 30, 2019), *aff'd*, 824 F. App'x 555 (10th Cir. 2020) (unpublished) (denying a motion for a new trial based on allegedly incredible witness testimony because there "was also independent evidence presented at trial that supported aspects of [witness's] testimony, including testimony by law enforcement agents"). For instance, the cooperator's testimony that he and Mr. Medina traveled to Colorado Springs to sell narcotics to Mr. Goolsby on June 19, 2022 was supported by GPS tracking data on Mr. Medina's vehicle and wiretapped conversations between Mr. Goolsby and Mr. Medina and between the

18

cooperator and Mr. Medina.  Moreover, even if the testimony was uncorroborated, a

motion for a new trial will not be granted "merely because the verdict was grounded on

the uncorroborated testimony of a coconspirator."  *Dewberry*, 790 F.3d at 1029 (citation

omitted).

The cooperator's failure to admit his involvement shortly after his arrest does not

mean his trial testimony was unbelievable on its face.  The cooperator testified that he

was "scared" in the initial post-arrest interviews, which was why he lied about his

involvement in narcotics dealing.  Mr. Medina does not explain why this explanation is

incredible, especially after the cooperator had the opportunity before trial to review the

strength of the government's evidence against him.  Furthermore, the fact that the

cooperator stands to benefit from his cooperation with the government is not a sufficient

basis to find his testimony incredible.  *See id.* (holding that the fact that "witnesses

testified out of self-interest because they were offered plea deals . . . does not

necessarily render testimony incredible" because "this is common in criminal

prosecutions"); *Gonzalez-Hernandez*, 2019 WL 1922081, at *4 ("The mere fact that

[cooperator] stood to benefit from her cooperation with the government is not a sufficient

basis, standing alone, to find her testimony incredible."); *see also United States v. Witt*,

43 F.4th 1188, 1195 (11th Cir. 2022) ("it simply can't be that any time the government

uses a cooperator witness, that witness's testimony itself constitutes a ground for a new

trial").  The jury was aware of the cooperator's agreement with the government, Docket

No. 465 at 10, and was able to weigh the credibility of the cooperator's testimony in light

of the cooperation agreement.  *See Witt*, 43 F.4th at 1195 (rejecting defendant's

argument that the testimony of a cooperating co-conspirator was "inherently unreliable

because he had significant reason to testify and to lie and to implicate others" because defendant "introduced all of that information as impeachment evidence at trial for the jury to consider" and the co-conspirator's testimony was corroborated by another witness) (internal quotations omitted); *United States v. Daniels*, 2025 WL 1000682, at *5 (S.D. Fla. Apr. 2, 2025) ("Where a court properly instructs the jury and affords the defense an opportunity to conduct cross-examination, the jury's assessment of a plea-bargaining witness's credibility shouldn't be disturbed by a new trial.").

Similarly, the jury was aware that the cooperator may be considered an "abuser of drugs". Docket No. 465 at 12. The jury instructions informed the jury that the testimony of a "drug abuser" should be "examined and weighed . . . with greater caution than the testimony of a witness who does not abuse drugs" and they "must determine whether the testimony" of the cooperator "has been affected by the use of drugs or the need for drugs." *Id.*; *see also United States v. Thompson*, 504 F. Supp. 3d 160, 167 (W.D.N.Y. 2020) (denying defendant's motion for a new trial based upon "challenges to the credibility" of certain witnesses because while there were "various inconsistencies in the testimony of [witnesses], and their backgrounds and drug use supported viewing their testimony with caution," "the essential core of their testimony – that they were involved in a firearms conspiracy to acquire guns in Ohio through straw purchasers and then transport those guns to [defendant] in Buffalo – was not only entirely credible, but it was supported by other evidence in the case"). Therefore, credibility concerns arising from the cooperator's abuse of drugs is not a basis for a new trial.

Mr. Medina argues that the testimony of certain law enforcement witnesses was incredible. Mr. Medina claims that Special Agent Liever's testimony was "suspect,"

Docket No. 473 at 12, pointing to the fact that Special Agent Lievers was unable to get assistance from law enforcement in Colorado Springs with "1 hour and 45 minutes advance notice" to surveil the June 19, 2022 narcotics transaction involving Mr. Medina, the cooperator, and Mr. Goolsby. *Id*. at 12-13. He further argues that Special Agent Liever's testimony that "probable cause to search Mr. Medina's residence did not exi[s]t" "created credibility problems that were so significant that no reasonable jury could have entered a guilty verdict based on this testimony." *Id.* at 13. Mr. Medina argues that Sergeant Halliwill's "credibility was also at issue because he admitted during cross examination authoring a written report 2-years after Mr. Medina's arrest, stating . . . that a police K-9 was present during Mr. Medina's arrest in February 2023, that the [K]-9 alerted during a search of Mr. Medina's vehicle, and that a subsequent search of the vehicle revealed nothing of evidentiary value." *Id.*

As discussed previously, the June 19, 2022 narcotics transaction was corroborated by wiretapped conversations, GPS tracking, and the cooperator's testimony. Furthermore, Mr. Medina does not explain why Special Agent Liever's inability to obtain assistance from Colorado Springs law enforcement means that Special Agent Liever's testimony was incredible. As the government notes, Special Agent Lievers testified that coordinating law enforcement resources across jurisdictions is difficult and he was unable to do so in time to surveil the narcotics deal in Colorado Springs. Docket No. 516 at 11. Mr. Medina merely argues that the "vast resources of federal and state and local enforcement in the United States" is reason to question Special Agent Liever's testimony. Docket No. 473 at 13. Mr. Medina cites no evidence in the record to contradict Special Agent Lievers.

21

Similarly, Mr. Medina does not explain why Special Agent Liever's testimony –
that there was no probable cause to search Mr. Medina's residence in February 2022 –
is incredible.  *See id.*  The government argues that there was probable cause to arrest
Mr. Medina for drug distribution that ended in August 2022.  Docket No. 516 at 11.
However, as the government notes in its brief, law enforcement did not have probable
cause to search Mr. Medina's residence because his arrest occurred in February 2023,
and there was no evidence that Mr. Medina engaged in drug dealing between August
2022 and February 2023.  *Id.*  "Probable cause to search cannot be based on stale
information that no longer suggests that the items sought will be found in the place to be
searched."  *Id.* (quoting *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir.
2004)) (alteration omitted).  However, law enforcement had probable cause to search
Mr. Medina's vehicle because a K-9 at the scene of his arrest alerted them to the
presence of narcotics, even though no evidence was recovered from the vehicle.  *Id.* at
12.

Mr. Medina does not explain why Sergeant Halliwill authoring a report two years
after Mr. Medina's arrest, regarding the use of the police K-9, undermines Sergeant
Halliwill's credibility.  As the government explains, Sergeant Halliwill discovered that the
incident with the K-9 had not been memorialized during trial preparation and decided to
have Sergeant Halliwill prepare a report.  *Id.*  The jury knew that Sergeant Halliwill
authored the report in 2025 and was able to weigh any credibility concerns accordingly.
Mr. Medina does not explain why, even if Special Agent Lievers and Sergeant Halliwill's
testimony was incredible, the other evidence presented by the government was
insufficient to support the jury's guilty verdict.

Mr. Medina fails to show that this is an "exceptional" case in which "the evidence preponderates heavily against the verdict." *Evans*, 42 F.3d at 593 (citation omitted). Accordingly, the Court will deny Mr. Medina's motion for a new trial pursuant to Rule 33.

## III.    CONCLUSION

Therefore, it is

**ORDERED** that Defendant Leonardo Medina's Motion for Judgment of Acquittal or in the Alternative Motion for New Trial [Docket No. 473] is **DENIED**.

DATED May 28, 2025

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge